RECORD NUMBER: 14-4159

# United States Court of Appeals

*for the*

# Fourth Circuit

**UNITED STATES OF AMERICA,**

*Appellee,*

– v. –

**KEVIN MITCHELL EADES, a/k/a EZ,**

*Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT SPARTANBURG**

# OPENING BRIEF OF APPELLANT

**DEREK J. ENDERLIN**
**ROSS & ENDERLIN, P.A.**
**330 East Coffee Street**
**Greenville, South Carolina 29601**
**(864) 647-7205**

*Counsel for Appellant*

**CP** **COUNSEL PRESS** • VA – (800) 275-0668

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................ ii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION .................................................. 1

ISSUES PRESENTED FOR REVIEW ...................................... 1

STATEMENT OF THE CASE ...................................................... 2

    ARMED CAREER CRIMINAL STATUS ......................... 3

    POINT CLASSIFICATION ............................................... 5

SUMMARY OF ARGUMENT ................................................... 7

ARGUMENT ............................................................................... 8

    I.  THE PLEA AGREEMENT WAS VOID ..................... 8

      A. Standard of Review ............................................... 8

      B.  Argument ............................................................. 8

      The Armed Career Criminal Act ............................ 8

      PLEA AGREEMENT ............................................. 10

      Prejudice .............................................................. 14

    II. WHETHER EADES WAIVED HIS RIGHT TO APPEAL ......... 17

    STATEMENT OF FACTS REGARDING WAIVER ...................... 17

ARGUMENT ............................................................................... 18

    A.    Standard of Review ............................................... 18

    B.    Argument ............................................................. 19

III. WHETHER EADES WAIVED HIS RIGHT TO APPEAL ........ 20

FACTS REGARDING TIMELINESS ................................................ 20

ARGUMENT....................................................................................... 21

CONCLUSION ............................................................................................ 24

REQUEST FOR ORAL ARGUMENT ........................................................ 24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**

*Anders v. Turner*,
    379 F.2d 46 (4 Cir. 1967) .................................................................. 13

*Brand v. Motley*,
    526 F.3d 921 (6th 2008) .................................................................... 21

*Houston v. Lack*,
    487 U.S. 266 (1988).................................................................... 21, 22

*Lassiter v. Turner*,
    423 F.2d 897 (4th Cir. 1970) ............................................................ 13

*Love v. Daniels*,
    2013 WL 6487352 (10th Cir. 2013) .................................................. 22

*Mabry v. Johnson*,
    467 U.S. at 509 ................................................................................ 12

*Massaro v. United States*,
    538 U.S. 500 (2003)......................................................................... 23

*McCarthy v. United States*,
    394 U.S. 459 (1969)................................................................... 11, 13

*Ray v. Clements*,
    700 F.3d 993 (7th Cir. 2012) ...................................................... 21, 22

*Sulik v. Taney County*
    316 F.3d 813 (8th Cir.2003) ............................................................ 22

*United States v. Ashford*,
    718 F.3d 377 (4th Cir. 2013) ........................................................... 15

*United States v. Brunetti*,
    376 F.3d 93 (2d Cir. 2004) ............................................................... 12

*United States v. Carter*,
  454 F.2d 426 (4th Cir.1972) ............................................................... 13

*United States v. Copeland*,
  707 F.3d 522 (4th 2013) ..................................................................... 19

*United States v. Demond Jackson*,
  518 Fed. Appx. 166 (4th Cir. 2013) .................................................... 21

*United States. v. Faruq*,
  53 F.3d 329 (4th Cir. 1995) ................................................................ 12

*United States v. Harvey*,
  791 F2d 294 (4th Cir. 1986) ............................................................... 13

*United States v. Has No Horses*,
  261 F.3d 744 (8th Cir. 2001) .............................................................. 12

*United States v. Jordan*,
  509 F.3d 191 (4th Cir. 2007) ........................................................... 8, 10

*United States v. Kilcrease*,
  665 F.3d 924 (7th Cir. 2012) .............................................................. 12

*United States v. Manigan*,
  592 F.3d 621 (4th Cir. 2010) .......................................................... 18, 19

*United States v. Nash*,
  627 F.3d 693 (8th Cir. 2010) ................................................................ 9

*United States  v. Novosel*,
  481 F.3d 1288 (10th Cir. 2007) .......................................................... 12

*United States v. Richardson*,
  313 F.3d 121 (3rd Cir. 2002) ................................................................ 9

*United States v. Ringling*,
  988 F.2d 504 (4th Cir. 1993) .............................................................. 10

*United States v. Thornsbury*,
    670 F.3d 532 (4th Cir.2012) ............................................................ 19

*United States v. Walker*,
    321 Fed.Appx. 281 (4th Cir. 2009) ................................................... 11

*United States v. White*,
    366 F.3d 291 .................................................................................... 11

*United States v. Williams*,
    488 F.3d 1004 (D.C. Cir. 2007).......................................................... 11

*United States v. Wood*,
    378 F.3d 342 (4th Cir. 2004) .............................................................. 8

*United States v. Wright*,
    594 F.3d 259 (4th Cir. 2010) .............................................................. 9

*Washington v. United States*,
    243 F.3d 1299 (11th Cir. 2001) ......................................................... 21

## Statutes:

18 U.S.C. § 922(g)(1).......................................................................... 1, 2

18 U.S.C. § 924(a)(2)........................................................................... 1, 2

18 U.S.C. § 924(e) ...........................................................................*passim*

18 U.S.C. § 1112(a) ................................................................................ 15

U.S.S.G § 1B1.3(a) ................................................................................. 15

U.S.S.G. § 2A1.3(a) ............................................................................ 5, 15

U.S.S.G. § 2K2.1(c)(1)(B) ...................................................................... 15

## Other Authorities:

17A Am.Jur. 2d *Contracts* § 297 (2004) .................................................. 14

17A Am.Jur. 2d *Contracts* § 656 (2004) ..................................................... 14

Restatement Second, Contracts § 151 .......................................................... 14

**Rules:**

Federal Rule of Appellate Procedure Rule 4(c)(1) ...................................... 21

Federal Rules of Criminal Procedure Rule 32(e)(2) ................................... 16

Rule 11 ................................................................................................. 11, 19

## <u>STATEMENT OF SUBJECT MATTER</u><br><u>AND APPELLATE JURISDICTION</u>

This appeal arises from the criminal prosecution of Kevin Mitchell Eades in the district court for the District of South Carolina. Subject matter jurisdiction was based on 18 U.S.C. § 922(g)(1), 18 U.S.C. § 924(a)(2) and 18 U.S.C. § 924(e). Jurisdiction in the Court of Appeals is based on 18 U.S.C. § 3742 and 28 U.S.C. § 1291. The petitioner was sentenced on February 6, 2014. The judgment against the petitioner was entered on February 7, 2013. The notice of appeal was docketed on February 26, 2014. A more complete set of facts regarding timeliness can be found in the timeliness section. This appeal is from the judgment of the district court.

## <u>ISSUES PRESENTED FOR REVIEW</u>

THE APPELLANT WAS SENTENCED UNDER THE FALSE IMPRESSION THAT THE GOVERNMENT WAS REDUCING HIS SENTENCE BY AGREEING NOT TO ASK FOR SENTENCING UNDER THE ARMED CAREER CRIMINAL ACT (ACCA), BUT IN REALITY, THE APPELLANT WAS NOT SUBJECT TO THE ACCA AND THE PLEA, THE PLEA AGREEMENT, AND SENTENCING SHOULD BE VACATED BECAUSE THEY WERE ALL TAINTED BY THAT ERRONEOUS ASSUMPTION.

DID THE DEFENDANT WAIVE HIS RIGHT TO APPEAL?

1

WAS THE APPEAL FILED IN A TIMELY MANNER?

## **STATEMENT OF THE CASE**

Kevin Eades was charged in an indictment, docketed June 11, 2013, with possession of a firearm by a convicted felon based on 18 U.S.C. § 922(g)(1), 18 U.S.C. § 924(a)(2) and 18 U.S.C. § 924(e). App. p. 8. On October 28, 2013, he appeared with counsel before the district court and pled guilty. App. p. 12. Eades was sentenced on February 6, 2014 to serve the maximum sentence, 120 months imprisonment, followed by three years supervised release. App. p. 86.

The following recitation was agreed upon as the facts of the case:

Your Honor, on or about November 6th, 2012 – and this is as to both Mr. Eades and Mr. Polk. Your Honor, Mr. Polk and another individual got into a fight in York County. Mr. Eades was standing by and ended up shooting that individual, who later died from these gunshot wounds. After the shooting, Polk and Eades went on the run and were tracked in Spartanburg County.

Your Honor, on or about November 7th in the early morning, about 12:30 AM, Mr. Polk was arrested as he was walking down the street in Woodruff. In his pocket, an officer found a Taurus 9 mm pistol which was loaded. A little while later, police arrested Mr. Eades and found a Kel Tec 9 mm pistol in the car in which he was traveling. It was determined to have been a gun he had placed in that car. Your Honor, officers received a search warrant to search a residence where both defendants have been. They found a .22 caliber rifle that was determined to be the weapon which was used to shoot the individual who later died. This rifle had an obliterated serial number. They interviewed the residents of the location, who stated the defendants had

2

brought the rifle and the two handguns there earlier. Both Eades and Polk have prior convictions and they have not received any pardon for those convictions. All of the guns and ammunition have traveled in interstate commerce.

App. p. 59-60, 63. When asked if he wanted to tell the court his side of the story, Eades stated, "Yes sir, Your Honor. Although I don't agree with the armed career criminal enhancement, but I did possess a firearm while being a felon." App. p. 64.

## ARMED CAREER CRIMINAL STATUS

Eades' attorney noted during the plea colloquy, "[H]e's just not in agreement with the possible enhancement for the armed career criminal offender, and he would just ask me to put that on the record simply here so the probation officer wouldn't think he was in agreement. He does realize that is a sentencing matter and will be before the court in a separate matter." App. p. 39-40. The government acknowledged that its position was that Eades did qualify as an armed career criminal and it would be dealt with later. App. p. 60. The government also indicated Eades was facing a mandatory minimum of 15 years due to at least three prior convictions for violent felonies or serious drug offenses. App. p. 22. On the plea petition, Eades noted he faced a maximum sentence of "10 years if 922(g); life if career criminal enhancement applies (924e)"; he also noted "no minimum for 922(g) and 15 year minimum for 924(e)". App. p. 73.

3

A Presentence Investigative Report (PSR) was prepared on December 6, 2013 and it indicated the defendant was an armed career criminal. App. p. 118, Item 35. It relied on three burglary charges wherein Mr. Eades was adjudicated a juvenile delinquent. App. p. 112-3, Items 21 & 22.[1] The PSR noted that Eades objected to the ACCA classification based on the fact that his burglaries were non-violent and did not qualify under a modified categorical approach. App. 112. The probation agent determined that all the burglaries were violent, relying on the statute for the proposition that "'violent felony' means any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that – (ii) is burglary". App. p. 126-7. However, there is no evidence that the juvenile offenses involved the use of a firearm, knife, or destructive device.

The PSR was revised on February 5, 2014, one day before Eades' sentencing, and the armed career criminal enhancement was removed from the report. App. p. 137-8. Items 21, 22, 34-35. It still contained the appellant's objections noted above, as well as the probation agent's analysis that the ACCA did apply. App. p. 152-3. At the sentencing hearing, the government noted there were objections to the armed career criminal

---

1 There was also one adult burglary. App. p. 117.

enhancement; "And since that time the Government has reconsidered its position and agreed not to seek that enhanced provision but to go with the lower statutory maximum sentence of 10 years. The defendant, in exchange for that, has agreed to waive all rights – appellate rights…" App. p. 87. The government noted the new guidelines provided for a term above the maximum 120 months, and Eades' attorney stated they agreed with those calculations. App. p. 88. Eades' attorney also stated, "And we just would – cannot emphasize enough how much we appreciate this very gracious offer by the government and by probation for being in agreement with it. And if Your Honor's inclined, I would defer any mitigation if Your Honor's inclined to follow the recommendation." App. p. 89. And, "Again, he [appellant] is very gracious for the offer by the state." App. p. 90.

## POINT CLASSIFICATION

The defendant had a criminal history category of VI(App. p. 143) and was given a total offense level of 26. App. p. 145-6. This was based on a cross reference application stated as follows: "The offense involved the possession and use of an AR 15 type firearm in the commission of another offense that resulted in death constituting voluntary manslaughter." App. p. 145. Therefore, based on U.S.S.G. § 2A1.3(a), a base level of 29 was used, which was reduced by 3 points for acceptance of responsibility. The

5

guidelines calculation was therefore 120 – 150 months. Without the cross reference, the guidelines would have been 77 – 96 months. App. p. 145

Pages 5 through 6 of the PSR (App. p. 135-6) recited the following statements as indicated by their item number. Several individuals indicated Polk and the deceased, Travis Koin, agreed to physically fight each other and Eades was at the scene; this was on November 6, 2012. Items 6,7,12,13 and 14. Before they fought, both Koins and Polk were armed with pistols, but they surrendered their firearms to other individuals; some accounts suggest an individual named Adams held both firearms (Item 12) while other accounts suggest Eades held Polk's firearm. Item 7.

At some point in time, Koin and Polk stopped fighting and went inside to clean up. When they returned, they retrieved their weapons and began arguing again. One recitation stated that "Eades walked up to Koin with a .22 rifle and shot Koin several times." Item 6. Another recitation stated, "while [Koin and Polk] were arguing, Eades shot Koin numerous times with the rifle." Item 7. Another recitation stated Koin, "turned and walked toward Polk with his pistol in his hand. She said Koin was at the bottom of the steps and Polk was on the porch. Eades was about 5 feet away from Koin when he shot Koin multiple times with the AR-15 rifle." Item 12. It is agreed Polk and Eades fled the scene. On November 7, 2012, police

6

called Polk and Eades and Eades told the police he shot Koins in self-defense. He told the police he would turn himself in when he was represented by an attorney. He was instead stopped and arrested by law enforcement later that day and was found in possession of a handgun. App. p. 135. Item 10.

Eades gave a written statement on November 7, 2012 that indicated Koin had been threatening to kill Polk and was still talking about killing Polk after the fight, and "Adams gave Koin his gun back and Koin pointed it at Polk and Eades. Eades said he then emptied his gun into Koin to 'protect my life and the lives of three others." Item 13. Polk confirmed this version of the facts and that he believed Eades saved everyone's life by shooting Koin. Item 14. App. p. 136. The PSR indicates the murder charge against Eades was dismissed on November 16, 2012, ten days after the incident. App. p. 144.

## **SUMMARY OF ARGUMENT**

The appellant was sentenced under the false impression that the government was reducing his sentence by agreeing not to ask for sentencing under the armed career criminal act (ACCA), but in reality, the appellant was not subject to the ACCA and the plea, the plea agreement, and sentencing should be vacated because they were all tainted by that erroneous

7

assumption. This appeal was not appropriately waived, the agreement to waive the appeal was void, and the appeal was timely filed.

## ARGUMENT

## I.
## THE PLEA AGREEMENT WAS VOID.

### A.    Standard of Review.

"We review the district court's interpretation of a plea agreement de novo. *United States v. Wood*, 378 F.3d 342, 348 (4th Cir. 2004)." *United States v. Jordan*, 509 F.3d 191 (4th Cir. 2007).

### B.    Argument.

#### The Armed Career Criminal Act

The agreement[2] consisted of the government agreeing not to seek enhancement under the ACCA, 18 U.S.C. § 924(e). Because the ACCA pervades the entire case, it is necessary to begin with its interpretation. The reliance on Mr. Eades' juvenile crimes as predicate offenses under the ACCA was improper.[3] Unlike adult crimes, § 924(e)(2)(B) requires juvenile crimes to involve the use or carrying of a "firearm, knife or destructive

---

2 While the term "agreement" is sometimes used in the brief, appellant in no way implies there was a legal agreement between the parties.
3 *United States v. Hunter*, 735 F.3d 172 (4th Cir. 2013) held juvenile offenses could be violent felonies, but they still must comply with 18 U.S.C. § 924(e)(2)(B).

8

device" in order to be considered violent felonies.

This Court has acknowledged juvenile acts must involve the use of one of these three items. *United States v. Wright*, 594 F.3d 259 (4th Cir. 2010): "The relevant statutory provisions state that any burglary that is an "act of juvenile delinquency involving the use or carrying of a firearm … constitutes a violent felony. 18 U.S.C. § 924(e)(2)(B)." The key in *Wright* was that the juvenile crimes involved a burglary where the defendant stole firearms. See also, *United States v. Nash*, 627 F.3d 693 (8th Cir. 2010)(Acts of juvenile delinquency are violent felonies only if they involve the use or possession of a firearm, knife, or destructive device); *United States v. Richardson*, 313 F.3d 121, 126 (3rd Cir. 2002))(An act of juvenile delinquency introduces an additional wrinkle, for it will only count as a violent felony if the offense involved the use or carrying of a firearm, knife, or destructive device).

There were no allegations Mr. Eades' juvenile offenses involved the use of a firearm, knife or destructive device. App. p. 112-3, Items 21 & 22. Any enhancement based on those offenses would have been impossible. It is apparent from the PSR that both Eades' attorney and the probation agent failed to realize this additional element when dealing with juvenile crimes, however, it is clear, the ACCA did not apply to Mr. Eades.

9

## PLEA AGREEMENT

"In interpreting plea agreements, we draw upon contract law as a guide to ensure that each party receives the benefit of the bargain. *United States v. Ringling*, 988 F.2d 504, 506 (4th Cir. 1993)." *United States. v. Jordan*, 509 F.3d 191, 195 (4th Cir. 2007).

> Whether a written agreement is ambiguous or unambiguous on its face should ordinarily be decided by the courts as a matter of law. If the plea agreement is unambiguous as a matter of law, and there is no evidence of governmental overreaching, we should interpret and enforce the agreement accordingly. Because a defendant's fundamental and constitutional rights are implicated when he is induced to plead guilty by reason of a plea agreement, we analyze a plea agreement with greater scrutiny than we would apply to a commercial contract. We thus hold the Government to a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities in plea agreements.

*Id.*at 195-196.(Internal quotes and citations omitted).

As a preliminary matter, the terms of the agreement are ambiguous. The terms may be seen as an agreement to the maximum sentence, but it is not clear. The government stated it agreed not to seek enhancement "but to go with the lower statutory maximum sentence of 10 years. The defendant, in exchange for that, has agreed to waive all rights – appellate rights..." App. p. 87. "And that they [defense] do agree with these new calculations and with the waiver of appellate rights." App. p. 88. It appears Mr. Cook believed the maximum sentence was a gracious offer and a recommendation

10

from the government to which they acquiesced. App. p. 89-90. It is not clear from the transcript whether Eades was agreeing simply to waive his appellate rights or if he was also agreeing to the maximum sentence of 10 years. The agreement is ambiguous.

The district judge did not question the defendant regarding the terms of the agreement and did not accept the plea agreement nor ascertain appropriate facts to determine the voluntariness as required under Federal Rule of Criminal Procedure Rule 11. One of the central purposes of a Rule 11 plea colloquy is to ensure that a "defendant's plea is truly voluntary". *United States v. White*, 366 F.3d 291 (4th Cir. 2004) citing *McCarthy v. United States*, 394 U.S. 459, 465 (1969). For these reasons alone, the plea agreement should be void and the case remanded to the district court.

More importantly, it is clear, the government was agreeing not to seek enhancement under the ACCA. The government could not make such an agreement; "*cf. United States v. Williams*, 488 F.3d 1004, 1011 & n.9 (D.C. Cir. 2007)(declining to address claim that Government breached plea agreement by seeking ACCA sentence where plea agreement discussed only career offender provision, but noting that 'the Government could no more have agreed to deviate from the statutorily required sentence than could the district court')." *United States v. Walker*, 321 Fed.Appx. 281 (4th Cir. 2009).

11

The agreement is void because the government could not legally do what it promised.

The contract would also be void for lack of consideration; because Eades was not subject to enhancement under the ACCA, the government can present no valid consideration for agreeing not to seek said enhancement. *United States. v. Faruq*, 53 F.3d 329 (4th Cir. 1995)(The Court rejected Faruq's assertion that there was inadequate consideration to form an agreement.) Many courts have acknowledged that there must be adequate consideration in order to have a valid plea agreement, although the following have all found the agreements contained sufficient consideration. *United States v. Kilcrease*, 665 F.3d 924 (7th Cir. 2012); *United States v. Novosel*, 481 F.3d 1288 (10th Cir. 2007); *United States v. Brunetti*, 376 F.3d 93, 95 (2d Cir. 2004); *United States v. Has No Horses*, 261 F.3d 744 (8th Cir. 2001).

Even if this was a normal contract it would be void, but these circumstances are even more important than a commercial contract.

> [T]he courts have recognized that those [contract] rules have to be applied to plea agreements with two things in mind which may require their tempering in particular cases. First, the defendant's underlying "contract" right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law. See Mabry v. Johnson, 467 U.S. at 509, 104 S.Ct. at 2548 (broken government promise that

12

induced guilty plea implicates due process clause because it impairs voluntariness and intelligence of plea). Second, with respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights--to concerns for the "honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government." United States v. Carter, 454 F.2d 426, 428 (4th Cir.1972).

*United States v. Harvey*, 791 F2d 294, 301 (4th Cir. 1986).

Even if all of the above arguments are rejected, the contract would still be voidable because the agreement was induced by an improper assertion. While there is no evidence that the government's promise was given through insincerity, it has the same effect of overreaching. This Court has held similar unlawful inducements improper:

> *"*We do not attempt to define every instance in which a promise or inducement which effects a guilty plea is permissible or is proscribed. But we have no difficulty in concluding that a threat by a prosecutor to do what the law will not permit, if it motivates a defendant ignorant of the impossibility, renders the plea involuntary. In such a circumstance, the representation takes on the character of a trick or an artifice inducing the plea, even though the prosecutor is also unaware of its forbidden character. In effect, the defendant is deceived into making the plea, and the deception prevents his act from being a true act of volition. Cf., McCarthy v. United States, supra; Anders v. Turner, 379 F.2d 46 (4 Cir. 1967)."

*Lassiter v. Turner*, 423 F.2d 897, 900 (4th Cir. 1970) (Prosecutor had threatened to reopen closed case if defendant did not plea but case was

13

barred from re-opening). This agreement was clearly entered with the belief that the Government was "graciously" not enhancing appellant's sentence under the ACCA. Such an inducement would clearly affect the knowing and voluntary nature of the plea agreement. *Id.*

Furthermore, courts will not enforce an agreement if it is illegal or against public policy. 17A Am.Jur. 2d *Contracts § 297* (2004). The contract is also void due to mutual mistake. Restatement Second, Contracts § 151. The contract is also void due to the agreement to refrain from doing what is in fact an impossible act. 17A Am.Jur. 2d *Contracts § 656* (2004).

### Prejudice

Because the plea agreement is void, it should be remanded to the district court regardless of prejudice. Furthermore, as this Court has held, improper ACCA enhancement is a fundamental miscarriage of justice. *Whiteside v. United* States, 748 F.3d 541 (4th Cir. 2014). An inducement to plea guilty in order to avoid that improper enhancement is no less a fundamental injustice and this case should be remanded for that reason.

But the appellant can also show clear prejudice based on this improper plea. If the government had acknowledged Eades was not subject to ACCA enhancement, he could have proceeded to trial if he believed he was going to get the maximum sentence regardless. More importantly, he could have

14

challenged the conclusions in the PSR. The PSR relied on a cross reference that the use of the firearm was in conjunction with the felony offense of voluntary manslaughter based on U.S.S.G. §2K2.1(c)(1)(B) and U.S.S.G. § 2A1.3(a) to establish a base offense of 29.

"Ordinarily, when determining whether a district court properly applied the advisory Guidelines, including its application of a cross reference, we review the district court's legal conclusions de novo and its factual findings for clear error." *United States v. Ashford*, 718 F.3d 377 (4th Cir. 2013)(Internal quotes and citations omitted). Even assuming this incident was relevant conduct under U.S.S.G § 1B1.3(a), the District Court made no factual findings and did not adopt the findings of facts of the PSR. Furthermore, neither the transcript nor the PSR offers sufficient facts to support the finding of voluntary manslaughter: "'[voluntary] manslaughter is the unlawful killing of a human being without malice .... [u]pon a sudden quarrel or heat of passion.' 18 U.S.C. § 1112(a)'". *Ashford* at 384. The evidence suggests that this was not an unlawful killing, but instead was one of self-defense, but even if it was not, there is no indication the appellant was involved in a sudden quarrel with the deceased nor is there evidence he was acting in the heat of passion. This would also be confirmed by the fact that the initial charges were dismissed 10 days after the killing.

15

If the cross reference was eliminated from the PSR, the total offense level would be reduced to 21, which would mean a guideline range of 77-96 months, a substantially shorter sentence than the one appellant received. If Item 43 or 45 were eliminated the total offense level could be reduced an additional 4 or 8 points.

Significant in this analysis, is that the pre-trial sentence investigation report was revised the day before the sentencing. Federal Rules of Criminal Procedure Rule 32(e)(2) requires the presentence report be delivered to the defendant and the defendant's attorney at least 35 days before sentencing. Rule 32(g) requires it be delivered to the Court at least 7 days before sentencing. Revision of the PSR on the eve of sentencing, combined with the improper inducement mandates remand in this case.

Furthermore, the judge most likely felt Eades inherently deserved the maximum sentence, believing he was in reality an armed career criminal, a classification this Court has acknowledged "casts the defendant as a hopeless recidivist worthy of the strictest possible punishment". *Whiteside v. United States*, 748 F.3d 541 (4th Cir. 2014).  For all of these reasons the appellant's plea should be vacated and remanded to the district court.

## II. WHETHER EADES WAIVED HIS RIGHT TO APPEAL

## STATEMENT OF FACTS REGARDING WAIVER

There were multiple defendants in the plea hearing on October 28, 2013, and two of those individuals had plea agreements and waived their right to appeal; Mr. Eades was not one of those individuals. App. p. 47-8. As is noted above, it was not until sentencing that there was further mention of an agreement and waiver of appellate rights: the government indicated that the defendant "agreed to waive all rights – appellate rights, that includes the right to a direct appeal to challenge his conviction or sentence. It also – – he agrees that he will not pursue any action, a 2255, except for allegations of ineffective assistance of counsel or prosecutorial misconduct." App. p. 87. Mr. Eades attorney agreed, "[W]e definitely waive our appellate rights and any action under 2255 except for ineffective assistance of counsel and prosecutorial misconduct." App. p. 88.

The district court also asked:

> The Court: All right. What about the waiver?
>
> Mr. Cook: "Yes, sir, the waiver of appeal? He definitely
>
> waives any rights to appeal, any rights to any action under
>
> 2255. I've explained all of that to him. Again, he is very
>
> gracious for the offer by the State."

17

The Court: All right. Okay. Anything you want to say?

The Defendant: No, Your Honor. I'm just very sorry. I

deserve this. Thank you.

App. p. 90. The judge then read the sentence and concluded with the

following:

The Court: There has been a waiver of appellate rights?

AUSA: Yes, sir.

Mr. Cook: Yes, sir.

The Court: You follow me?

The Defendant: Yes, sir.

The Court: You fully understand that?

The Defendant: Yes. Your Honor.

The Court: All right.

App. p. 92. The Court made no indication whether he accepted the plea

agreement and made no factual findings regarding a waiver of appellate

rights.

## ARGUMENT

**A.    Standard of Review**

The issue of whether a defendant has waived his right to appeal in

connection with a plea proceeding is a matter of law that the Court reviews

de novo. *United States v. Manigan*, 592 F.3d 621 (4th Cir. 2010).

18

**B.    Argument**

The agreement is void or voidable for the above reasons; therefore, any agreement of Eades to waive his right to appeal is obviously void as well. Furthermore, the short colloquy concerning the agreement is an insufficient enquiry and acceptance by the district court, and it clearly did not instruct Eades regarding the details of such a waiver as required by Rule 11.

> Generally, if a district court questions a defendant regarding the waiver of appellate rights during the Rule 11 colloquy and the record indicates that the defendant understood the full significance of the waiver, the waiver is valid.

*United States v. Copeland*, 707 F.3d 522 (4th 2013)(quoting *United States v. Thornsbury*, 670 F.3d 532, 537 (4th Cir.2012)).

> An important factor in such an evaluation is whether the district court sufficiently explained the waiver to the defendant during the Federal Rule of Criminal Procedure 11 plea colloquy. Indeed, Rule 11 specifically mandates that a district court, before accepting a plea of guilty, inform the defendant of, and determine that the defendant understands, ... the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.

*United States v. Manigan*, 592 F.3d 621 (4th Cir. 2010)(Internal quotes and citations omitted). There was not a sufficient colloquy to establish a voluntary waiver, especially considering the improper inducement.

### III. WHETHER EADES NOTICE WAS TIMELY

### FACTS REGARDING TIMELINESS

The petitioner was sentenced on February 6, 2014. The judgment against the petitioner was entered on February 7, 2013. App. p. 94. The notice of appeal was due the earliest on February 21, 2013, a Friday. The notice of appeal was *pro se* and has a date of February 18, 2013. App. p. 99. It was mailed from the Anderson City Jail. The Anderson City Jail does not pick up mail from inmates on Saturday and does not have a log that tracks mail. App. p. 105.

Based on the envelope (App. p.100) it appears Eades mailed the notice from the Anderson City Jail to Ross Anderson, Clerk of Court, PO Box 8002, Anderson, SC 29624. PO Box 8002 is the address for the County of Anderson, however, their zip code is 29622. Judge Anderson's mailing address is Post Office Box 2147, Anderson, SC 29622. The United States District Court also receives mail at the physical address which is 315 South McDuffie Street, Anderson, SC 29624. Regardless, the envelope traveled from Anderson to Greenville where it was postmarked on February 24, 2014, the Monday following the Friday deadline to file the notice of appeal. App. p. 100. It traveled back to Anderson where it was x-rayed by the United States Marshall Service on February 25, 2014. App. p. 101.The

20

notice of appeal was docketed on February 26, 2014. App. p. 99.

**ARGUMENT**

This Court has dismissed appeals *sua sponte* for untimeliness. *United States v. Demond Jackson*, 518 Fed. Appx. 166 (4th Cir. 2013) quoting *United States v. Mitchell*, 518 F.3d 740, 750 (10th Cir. 2008). The notice of appeal was timely, but regardless, this Court should not dismiss this appeal.

A prisoner's filing date is governed by Federal Rule of Appellate Procedure Rule 4(c)(1), the "prison mailbox rule". His notice of appeal is considered filed when he delivers it to prison officials. *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379 (1988). Three circuits have essentially held that once a prisoner certifies he delivered the document to prison officials before the deadline, it is strong evidence he has done so. "Absent evidence to the contrary in the form of prison logs or other records, we will assume that Washington's motion was delivered to prison authorities the day he signed it, October 6, 1998." *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001). See also, *Brand v. Motley*, 526 F.3d 921 (6th 2008)(Absent contrary evidence, it is assumed the document was delivered the day signed). The Seventh Circuit similarly holds that once a prisoner has certified he delivered the document to prison officials, the burden of proof is on the government to show that it was not timely delivered. *Ray v. Clements*, 700

21

F.3d 993, 1010 (7th Cir. 2012):

> The state "will be the only party with access to at least some
> of the evidence needed to resolve such questions." [Houston
> v. Lack, 487 U.S. at 275-76]. It could, for example, produce
> "prison mail logs" or present the (likely non-adverse)
> testimony of the prison official who allegedly handled the
> prisoner's mail. As for the pro se prisoner confined to his
> cell, "evidence on any of these issues will be hard to come
> by" and he can "only guess whether the prison authorities,
> the Postal Service, or the court clerk is to blame for any
> delay." *Id.*

Having certified that Eades did in fact deliver the notice of appeal to jail

officials before the deadline, along with the fact that it was postmarked the

business day after filing in a different city from where it was mailed, it must

be presumed the appellant did in fact timely file this notice of appeal.[4] Based

on the fact that the jail does not maintain mail logs, it would be impossible

to discern whether the jail failed to collect mail appropriately that day, or

whether they failed to deliver the collected mail to City Hall on the same

day, or whether they failed to deliver it to City Hall before the postman

made his rounds that day, or whether someone failed to deliver the mail to

the Anderson Post Office for delivery.

The only possible scenario that the envelope was not given to jail

---

4 Two circuits have found that a postmark on the day of the deadline or days
before the deadline is sufficient to prove valid filing. *Love v. Daniels*, 2013
WL 6487352 (10th Cir. 2013); *Sulik v. Taney County*, 316 F.3d 813 (8th Cir.
2003).

officials by the deadline would require that Eades falsified the signature date, gave the envelope to the jail on the morning of February 24, the jail delivered the envelope to City Hall that same day, it was retrieved by a postman the same day, it was then transported to the Anderson Post Office the same day, the Anderson Post Office then transported it to the Greenville Post Office the same day, and on that same day it was postmarked by the Greenville Post Office.

Finally, "[t]here may be cases in which trial counsel's ineffectiveness is so apparent from the record that appellate counsel will consider it advisable to raise the issue on direct appeal." *Massaro v. United States*, 538 U.S. 500 (2003). Based on the record, it is clear Eades' counsel was ineffective in failing to advise him that he did not fall under the ACCA. This case should be reversed based on that clear ineffective assistance and the resulting prejudice mentioned above. Furthermore, in this situation, failure to assist the appellant in filing the appeal or in making a motion to extend the time for filing, should be considered ineffective assistance on its face, and this case should be remanded so as to correct this miscarriage of justice.

## <u>CONCLUSION</u>

For the reasons stated, appellant asks this Court to declare any

agreement void and remand this case to the District Court.

## **REQUEST FOR ORAL ARGUMENT**

Counsel for appellant respectfully requests oral argument .

Greenville, South Carolina
June 12, 2014                              Respectfully submitted,


s/Derek J. Enderlin_____
DEREK J. ENDERLIN
Ross and Enderlin, PA
330 East Coffee Street
Greenville, S.C.  29601
(864) 647-7205
ATTORNEY FOR APPELLANT

24

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 14-4159        **Caption:** United States v. Kevin Eades

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓] this brief contains _____5,555_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ] this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓] this brief has been prepared in a proportionally spaced typeface using
   MS Word 2010 [*identify word processing program*] in
   Times New Roman, 14 point [*identify font size and type style*]; **or**

   [ ] this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) Derek J. Enderlin

Attorney for appellant

Dated: 6/12/2014

# CERTIFICATE OF SERVICE

I certify that on <u>June 12, 2014</u> the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Elizabeth Jean Howard
OFFICE OF THE U.S. ATTORNEY
55 Beattie Place
Suite 700
Greenville, SC 29601
864-282-2144
jeanne.howard@usdoj.gov

/s/ Derek J. Enderlin
_____
Signature

6/12/2014
_____
Date